Thank you for advancing this one day, and thank you for advancing it even on the calendar. I don't mean to be a total prima donna. Dr. Johnson once said it's amazing, about to be executed focuses one's mind, about to catch a plane also focuses one's mind for oral argument. Very good. Proceed. So, I'm going to focus just on the first issue, which is the Batson claim, and essentially the facts in the case are laid out in the brief pretty clearly, and obviously the first question I have is how can I survive the standard of review, which in a Batson claim and a habeas case is obviously extremely difficult. We were reminded yesterday. Yes, well, I, so. So, your best claim it seems to me is the juror who, prosecutor says, well, I didn't, I didn't, he served on a civil jury before, and I didn't want him confusing the burden of proof, which would have aided the prosecution. So, why isn't a silly reason, a misguided reason, but a non-discriminatory reason enough? Well, I mean, here, the way I think, initially I think the state court got the standard wrong in that how they were applying people versus Lennox, and essentially while we get into the interstices of what might be what's left over between Wheeler and Batson, the state court said as long as the state court makes a, essentially what they did is a sincere and reasoned effort in evaluating the non-discriminatory justification offered, its inclusions are entitled to deference on appeal. Well, ultimately, it's not the state court's reasoned and sincere effort, it's the prosecutor's reasoned and sincere effort. Now, maybe I'm parsing words, but essentially it's not saying, well, we think that the trial judge was sincere, but we have to see whether or not the prosecutor was sincere, and whether or not the reasons are being offered as pretextual. So, that was the first error that I think that the state court did. They were really misapplying what was the applicable federal standards. So, that would, one, be one reason to take it outside of the objectively unreasonable standard of review, as they are misapplying federal law. The other is, when they were determining what was the prejudice, essentially the state court relied on people versus Stanley, which, I mean, I'm not going to say it was an a fortiori argument, but they said, well, we can't see that there's necessarily prejudice because, after all, the prosecutor sat some men and didn't exclude them all. Now, that, I suppose, can be a factor, but one could also look at it as an error to say, well, it's okay to get a few off, but you can't, but there were a few that were on, and that also is clearly misapplying what is federal laws interpreted by the United States Supreme Court in Snyder versus Louisiana. Let me tell you how I read the California Court of Appeal decision. You tell me where I've missed the boat. Okay. They say that the prosecutor gave a gender-neutral reason, namely he didn't want people who had been on civil trials before, and they say we find that believable because the only other prospective juror who had prior civil jury experience was also kicked off by the prosecutor, so right or wrong, whether you think it's a wise move for the prosecutor or a foolish move by the prosecutor, that's why he did it. It was gender-neutral, and they believe him. Why isn't that the end of the story? Well, because I think in turning, you have to see what the entire context is, and that's where I think this now gets into whether it's an unreasonable application of the law of the facts, because let's look at the whole situation. Initially, when the first Batson claim is made, the prosecutor says, well, I didn't know white men were a protected group. Okay, that's why you may not believe him, but if the judge is there on the scene, and the judge believes him, and there's some reason to believe him, some reason to disbelieve him too, but as long as there's some reason to believe him, and the judge believes him, and the California Court of Appeals says there was some reason to believe him, I don't see how we are in a position to second-guess that. Actually, I think the juror that had the other civil experience, which was juror number 13, was accepted by the prosecutor. It turns out they were wrong, and she said she had civil experience, and lo and behold, she had criminal. But she said, I thought I had served on a civil case, and she was accepted by the prosecutor. So actually, if that's the basis on which the trial court made its determination, it's wrong, because one of them said, I was on a civil jury, but more than that, it's a silly reason. I mean, it's a silly reason in evaluating the, well, I mean, it's beyond a silly reason. But this prosecutor was sleeping through this. He thought one person was a philosophy major, and he wasn't. He didn't even remember who juror 14 was until defense counsel. Well, the dog ate my paper. I mean, he didn't have the notes. Right. Well, and so, well, so I think in, I mean, what I'm resisting, and I say the California Court of Appeal was wrong in kind of balkanizing these into separate issues. Essentially, what you have to do is see whether the pattern of conduct by the prosecutor is showing a discriminatory intent. And in that, this court said in Kessa v. Cambrick, you don't necessarily, a trial court judge does not necessarily just say, these are my reasons and have to believe them. I mean, one has to look and determine what is the credibility. And this court has said, even under a Batson analysis, while you have to be deferential under the objectively unreasonable standard, you do, in determining a comparative juror analysis, do your own de novo review. And so, in a de novo review, in looking at this and seeing the pattern of behavior, I mean, well, so my answer to your question, Judge Silverman, is initially the judge was wrong when he was saying, well, it's okay if you're going to exclude all civil jurors. And it turns out, well, actually, they accepted one who turned out she was wrong in a civil jury, but her answer was that she was. So that answer is not believable. But then you go to what is essentially the conduct, or not only the conduct, but the context. First, I don't think it's an excludable group. And then the basis on which he's saying he's excluding a man versus a woman who is Juror 13 is saying they're a loner and doesn't have any children. Juror 13 is a loner, apparently, because she doesn't have any children either, and she's accepted. He doesn't like people who are on the work for the newspapers. Juror 13, who was accepted, was a retired Union Tribune employee. That was the reason when they sort of made up and got Juror 36 confused with Juror 40, I don't like him because he might also work for the newspaper. So that reason is given that's wrong. The reason is given in terms of, well, I don't like somebody who's on a civil jury. Yes, I suppose a charitable way of saying it's a silly reason, or it's a made-up reason to try and cover the fact that you are now striking someone because someone who is on a civil jury and thought that the preponderance of the evidence standard applied would be more favorable to the prosecutor. These are all factors that this Court has used to determine whether or not. Tell me how this case is really different from Rice v. Collins, for example. Well, I think in Rice v. Collins, essentially they were looking at the, it was a question of sort of credibility based on demeanor, and here it was credibility based on answers, and I'm not sure exactly. I don't know. I mean, Rice is, I think you've got a stronger case than Rice, but it's not much stronger. I mean, Rice, the prosecutor, just got stuff wrong, and it looked contextual on his face, but you really had to drill down to figure that out, and here the prosecutor got it right in the sense that there was prior civil experience, but the explanation makes no sense. And I had the same feeling in Rice v. Collins when the Supreme Court said forget all that. You know, the state courts found as they found, and we're not supposed to look too deeply into it. Well, I mean, I think what the court didn't like in what was happening in Rice v. Collins, it was just a sort of a complete re-evaluation in saying we don't think that all of this is credible. Right. But this we're saying here is we don't think it's, I mean. But there are post-Rice v. I mean, this court has had post-Rice v. Collins cases where that exact same analysis has gone through. Yeah, but they haven't gone out. And they have survived. I mean, I'm not inviting you to go off and be beaten up in Washington, except obviously I want to win. But we have to faithfully follow what the Supreme Court says. True. I'm not trying, but I think realistically to do any kind of, to do a comparative juror analysis and to allow this court to do so, one does have to compare and see, all right. True, but you're right. May I say just for a second that the difference in this and Rice, and I'll go back to Rice, but as I recall, Rice was a pretty anemic state court record. I mean, there was really no judicial analysis. Here, albeit there may be differences in Wheeler and Batson analysis, we have a pretty extensive state court analysis. Well, there's an analysis, but I think, well, I think their focus is off. I mean, obviously I think they're standard. But, I mean, let me give you an example of, okay. If the gum chewing juror, if that was the only basis on saying it and we just don't think that that's a basis on which to believe it, then that really is closer to Rice because you're saying, okay, well, you haven't really backed it up and we just don't think that that's very persuasive. If that were the only basis on which to do it, I would not survive. I mean, and maybe I won't survive on gum chewing juror number on the third basis. But if you look at the whole pattern and see it does have to fit. If someone is going to give a reasoned explanation and for a court to make a reasoned, objectively reasonable determination on whether or not it's believable, you have to see whether the pattern fits. And if they say, I'm consistently getting it wrong because I just don't remember or I'm consistently getting it wrong because I want people with civil experiences, which might be a red flag to say I'm not sure that's correct. But then it turns out it's wrong because a juror who says that she's had prior civil experience is accepted and then says I don't like people who are on the newspaper and then someone who is a retired newspaper employee is accepted. We're now beyond that. We're now beyond, well, we just don't think it fits together to we are now giving self-contradictory answers. And to that extent, it is different than Rice. It is more than just looking at kind of a general record and saying, well, we're not persuaded, but in looking at it, it just is objectively unreasonable for a court to have looked at this and thinking under this standard that these reasons were not contextual. I want to reserve some time. Yes. Thank you. Good morning, Your Honor. May it please the Court. I'm Kevin Viena, California Deputy Attorney General, here for appellee and respondent in this matter. Your Honor, I agree with opposing counsel that most of the factual matters are thoroughly briefed in this case. And I agree also that there are some explanations by the prosecutor that are difficult to penetrate. Or justify. I just don't get it. I mean, can you explain why the burden of proof difference would, I mean, let's take the explanation. He says I don't want anybody there who's had civil experience when actually that would make the prosecutor's job easier, theoretically. And then he allows a juror on who has had civil experience. What are we to make of that? I am unaware of a reason for prosecutors to say, I don't like jurors with civil experience. Perhaps the prosecutor in this case, I mean, I assume, and I think the Court should in the absence of evidence of the contrary, that this prosecutor, well, either he lied about it or he meant it. I mean, he doesn't like civil jurors. There were other questions from, or there were other answers from juror number 14. I suggest he was snoozing through it. Well, and I mean, I find it astonishing that he had erased the record of the basis for his challenge. There are reasons, without question, there are reasons for the trial judge to look at this carefully. And I think this trial judge did. But where I would disagree with my opposing counsel is that the state court's statement that essentially they defer or they place great weight on the determinations of the trial court judge is simply an application of Hernandez v. New York. When the matter gets to step three of Batson analysis, as it did here, the question really is the prosecutor's credibility. And in a step three analysis, the trial judge evaluates the prosecutor and the state court, the state appellate court, and I would presume the federal courts do the same thing, defer on those factual questions like perceptions of credibility. And this judge looked at the prosecutor and said, I find him credible. Indeed, opposing defense counsel saw that each of his stated reasons was reasonable and I think he used the word valid. But he asked instead at the time that the trial court place greater weight on that or not permit even valid reasons because of the goal of not presenting Mr. Hilton with an all-female jury. So was it unreasonable for the trial judge and for the court of appeal to accept the trial judge's conclusion that the prosecutor here was honest when he said these are the reasons that I got rid of these four jurors? And I think the answer to that is yes. It is not established but is bolstered by the fact that men wind up serving on the jury and that the prosecutor never tried, or at least there's no indication that I could find, that the prosecutor never tried to manufacture a reason against another male juror. How many strikes did they get? I think the answer is ten, but I'm not completely certain and that's a record. Nine and three, wasn't it? How many used, but the question is how many did they use? How many strikes? Do we know how he used the other strikes? I looked briefly at the record on that and it appeared to me that he used, or I could find only an indication. The record I had available to me showed that he used one more strike, interestingly, against juror number 40, the one who turned out to actually be the philosophy major in trial. Now, I also would disagree. Just one other factual question. The woman juror who sat through another juror's voir dire and then said, so I raised my hand on civil jury. It must have been a criminal case that I was on. She was left on. She was not, because she changed her hand raise to an affirmative statement, it was a criminal case. Is that correct? I think that is correct, Your Honor, although I don't remember that and I didn't read the entire voir dire. But I think there was some confusion and then it was established that she was not a civil juror and she remained a juror. I did read this transcript and that's what happened. She interrupted at the end and said, I raised my hand when you said civil. I've just now heard the other juror, prospective juror, and it was actually a criminal case. But apparently the people in the courtroom who were making the decisions didn't have that in mind. Right. Neither the defense counsel nor the trial judge saw this prosecutor's explanation of reasons at the time as being pretextual. So under your theory, that's just the end of the story. What role is it then? Is there any role in habeas son of bats? I mean, what are we supposed to do? I think that's an interesting question. I think it's an interesting question. That is, I would say that a determination of credibility in Step 3 is a finding of fact that can be overcome only by clear and convincing evidence under 2254E. But I don't see that anyone has actually applied it in that way, and I don't think the state courts apply it directly that way. But I think what you wind up with is, for me, the indefinable sort of double deference. That is, the state court judge decides in the first instance whether he finds the prosecutor's explanation to be truthful. The state appellate court places great weight on that if it appears that the trial court took its job seriously in examining the circumstances. That's the state standard, roughly. And then on habeas, the question is, was that unreasonable? It turns out to be a standard of review that relies, as it must, I think, greatly on the judgment of the trial judge because the trial judge is the only person who is familiar with that prosecutor and observes him in action. I think we have your argument at hand. Thank you, Your Honor. Your Honor, I was hearing counsel say, I can find no reason and it's astonishing. I don't know if you could define objectively unreasonable any other way. I mean, if you can't find no reason and there is, in fact, and it's astonishing the reasons that are given, that by any other name is objectively unreasonable. Let me postulate that a prosecutor could have in mind that if a juror has civil experience, even though putting that juror on the panel would seemingly be in the prosecution's favor,  somebody who is going to have a potential confusion, even if it's favorable to the prosecution theoretically, doesn't want a disharmony in the jury room about somebody who is operating on a wrong assumption or an application, if you will, of what these poorly understand burdens of proof are. We're all jumping to the assumption as lawyers. Because of the timing of the reason. The timing of the reason was, I didn't want to have, I mean, he's saying he doesn't want to have somebody who's on a civil case and that's a man, and she's answering that it turns out I'm on a civil. Later on, after he gives his reasons, she raises her hand and says, oops, I was on a criminal. Is that the way it goes? She came after the original, I read the transcript, and the transcript, they're voir direing somebody else, and then she raises her hand, she had raised her hand, anybody else on a civil case, she had raised her hand, as I understand it. And then you go back and look at the transcript and somebody else is being voir dired and the prosecutor or somebody is eliciting the difference between two, and it turns out that the juror under voir dire was saying, oh, well, then that had to be a criminal case. The court said, what you're describing, it had to be a criminal case. And the juror who had originally raised her hand, as I understand it, said, oh, by the way, I made a mistake, I must have been on a criminal case. Well, I mean, I think the timing was that it was after, I mean, okay, I know that this was done, but I think the timing was done in such a way it was made after the prosecutor gave his reasons. But even so, looking also, this is the same juror who's saying he doesn't like people who work on the newspaper, and yet this person is a retired newspaper employee. He no longer works on the newspaper. I mean, maybe he doesn't like people who work currently. You know, what is, is. Well, okay. I mean, I understand what, but. He doesn't want this showing up in the newspaper. Now the guy's retired, you know, he doesn't have that problem. Well, now she could be, well, one can manufacture reasons, but ultimately they have to be reasonable reasons. And I think given this, if you consider it all in the context that these reasons that were given, it would be objectively unreasonable to assume. I mean, even if you parse them out, but if you look at them all together, the issue really is not whether or not, I mean, what Hernandez v. New York says is that you have to make a determination of the credibility of the prosecutor, not, which is what the Court of Appeals did, do we believe the trial judge. And we, good, the trial judge may be sincere and reasoned, but ultimately to look at it, the focus is whether or not the reasons that are given by the prosecutor are believable, and in this case they are not. Let me ask you again about the Court of Appeal decision. It says, although Hilton maintains it's simply not believable that the prosecutor was concerned about the burden of proof, the people point out, and Hilton does not dispute, that the only other prospective juror who had civil experience was also dismissed. Is that true, that you didn't dispute that? I don't think that, well, I didn't handle the direct, okay, I didn't handle the direct appeal, but I think she was dismissed, but I think it may have been for another reason. I think it was dismissed by the... Dismissed by the prosecutor, it says here, that it wasn't disputed at the Court of Appeal. Right, that was not disputed in the Court of Appeal, that's correct. And if that's true, where does that leave us? Is that the law of the case then? Well, because I think you're still looking at the overall, in terms of the overall context and believability of what are the reasons are given, that ultimately in considering that and other factors, whether or not the reasons are believable. Okay. Thank you. Good luck. Thank you. Safe travel. Or successful travel, I guess. He'll make it. I'm fearing that there will be enough... I won't say there's no traffic, because that's the jinx in Los Angeles. Thank you. The case just arguably submitted for decision, and we will proceed to the next case on the oral argument calendar, which is United States v. Lopez-Gonzalo. Do I take that now?
judges: Thomas, Silverman, Fisher